1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9  SCOTT HEFTA,

10          Plaintiff,

11       v.                                          Case No.  C05-1071L

12  CRUISE WEST, INC., *et al.*,                     ORDER GRANTING IN PART
                                                     MOTION FOR PAYMENT OF
13          Defendants.                              MAINTENANCE AND AWARDING
                                                     ATTORNEY'S FEES
14

15       This matter comes before the Court on "Plaintiff's Motion for Payment of

16  Maintenance and Award of Attorney's Fees."  Dkt. # 10.  Having reviewed the memoranda,

17  declarations, and exhibits submitted by the parties, the Court finds as follows:

18       Plaintiff is a professional chef who worked as a seaman on cruise ships.  While

19  working on the MISSISSIPPI QUEEN on the Mississippi River, plaintiff injured his left elbow

20  and had to have surgery in October 2000.  He attempted to go back to work in December 2000,

21  but the pain in his elbow increased and he was taken off the job before the start of the new year.

22  In the spring of 2001, while plaintiff was undergoing treatment for his elbow injury (see Decl. of

23  Louis A. Shields at Ex. 4 (Dkt. # 20)), he communicated with a former co-worker, Mike Forte,

24  about the possibility of working for West Travel, Inc., aboard a Cruise West vessel.  Mr. Forte

25  made it clear that the work was demanding and would involve long hours.  Plaintiff went back to

26

27  ORDER GRANTING IN PART MOTION FOR
    PAYMENT OF MAINTENANCE AND
28  AWARDING ATTORNEY'S FEES - 1

his treating physician and obtained a return-to-work slip with no restrictions.  Mr. Forte arranged

for plaintiff to fly to Seattle, where plaintiff filled out a medical history questionnaire and

obtained training.  On the questionnaire, plaintiff indicated that he had suffered "back injury,"

"knee injury," and "elbow injury" and that he had undergone surgery.  In response to a request

for details regarding his surgeries, plaintiff wrote, "I herniated 2 lower discs in back in 89.  In 84

I frac. r. knee & tore all ligaments - hit by car.  In 2000 I tore tendens [sic] & nerves.  Had

surgury [sic] to repair."  Decl. of Louis A. Shields, Ex. 3 (Dkt. # 20).  Plaintiff was hired as an

executive chef on a Cruise West vessel on May 18, 2001, and performed that position for

seventeen months without incident.

On October 7, 2002, plaintiff reinjured his left elbow while loading laundry onto

the vessel.  He reported the incident to his supervisor, filled out a written report, and saw a

doctor in the vicinity of the ship.  Plaintiff returned home for additional medical treatment.

When the pain in his elbow persisted, he contacted Cruise West and informed them of the

situation.  He was offered an opportunity to resign his position as executive chef, which he

accepted on October 18, 2002.  It is not clear why plaintiff's employment ended in a resignation,

but the issue is not material to the resolution of plaintiff's motion.[1]  Plaintiff received

unemployment benefits from November 2, 2002, to September 27, 2003, and spent 30 days in

jail in 2003.  He underwent a second surgery on his elbow on April 3, 2003, attempted to return

to work as a chef's assistant for two months at the end of 2003, and had a third surgery on

March 23, 2004.  Plaintiff was released for light duty in December 2004, but continues to have

---

[1]  Plaintiff asserts that defendants promised to pay his medical bills, but asked him to resign so
that he could collect unemployment compensation from the state.  Decl. of Scott Hefta at ¶ 10 (Dkt.
# 12).  Defendants, on the other hand, assert that they offered to allow plaintiff to resign as a courtesy
because his employment was going to be terminated for "insubordination and sanitation issues" (Decl. of
Karin Thompson at ¶ 7 (Dkt. # 18)) or "unsatisfactory performance, which may have been related to his
alcohol use" (Decl. of Karin Thompson, Ex. 2 (Dkt. # 18)).  Either way, it is undisputed that plaintiff's
employment with defendants ceased shortly after he was injured.

ORDER GRANTING IN PART MOTION FOR
PAYMENT OF MAINTENANCE AND
AWARDING ATTORNEY'S FEES - 2

1  pain in his left elbow.  A functional capabilities evaluation showed that plaintiff's restrictions
2  are permanent, that he cannot work as a chef and must be trained in some other occupation, and
3  that he reached maximum medical improvement as of July 25, 2005.

4     In this motion, plaintiff seeks the payment of maintenance at the contractual rate of
5  $25/day from the date of his injury, October 7, 2002, to the date on which he reached maximum
6  medical improvement, July 25, 2005.  Plaintiff also seeks an award of the attorney's fees
7  incurred to secure payment of maintenance.

8  **MAINTENANCE**

9     The parties devote a substantial portion of their memoranda to the issue of whether
10  the Court should apply a summary judgment standard to plaintiff's request for maintenance.
11  The state of the law in this area is far from clear and often contradictory.  The Court finds it
12  unnecessary to resolve the issue because even if it were to apply a summary judgment standard,
13  it would nevertheless reach the conclusion that defendants are obligated to pay maintenance.

14     A person seeking maintenance and/or cure bears the initial burden of proving that
15  he is a seaman and that he was injured in service of the vessel.  See, e.g., Calmar S.S. Corp. v.
16  Taylor, 303 U.S. 525 (1938).  Defendants do not seriously contest either of these facts.  Plaintiff
17  was employed as an executive chef aboard the SPIRIT OF ENDEAVOR in October 2002 and
18  was injured in the service of the vessel.  Furthermore, defendant agreed to pay both maintenance
19  and cure if warranted and did, in fact, pay for plaintiff's medical costs.  Once the duty to pay
20  maintenance and cure is triggered, the shipowner's obligation to pay such expenses continues
21  until the seaman has reached "maximum cure," generally defined as a return to health or the
22  attainment of a state from which he will not get any better.  See, e.g., Vella v. Ford Motor Co,
23  421 U.S. 1, 5 (1975).  In this case, defendants have not identified any medical evidence that
24  plaintiff reached maximum cure before July 25, 2005.

25     Defendants do, however, argue that the obligation to pay maintenance and cure
26  never arose in this case because plaintiff intentionally misrepresented or concealed material

27  ORDER GRANTING IN PART MOTION FOR
 PAYMENT OF MAINTENANCE AND
28  AWARDING ATTORNEY'S FEES - 3

1    medical facts and/or did not have a good faith belief that he was fit for duty at the time he

2    applied for employment with Cruise West.  Even if the summary judgment standard applies to

3    these issues, defendants have failed to present evidence from which a reasonable fact finder

4    could conclude that plaintiff engaged in intentional concealment or bad faith.  The evidence in

5    the record shows that, when asked about his medical history,[2] plaintiff disclosed both his elbow

6    injury and his prior surgery.  Decl. of Scott Hefta, Ex. B (Dkt. # 12).  His written description of

7    his health problems mentions three items and mirror the injuries identified on defendants'

8    medical history checklist.  Defendants argue that the disclosure of the 2000 surgery to repair

9    tendons and nerves was a misrepresentation or an intentional concealment because plaintiff

10   failed to say that the surgery involved his elbow.  The elbow injury was fully disclosed,

11   however, and if there were any question regarding whether the last item related to that injury,

12   defendants could have sought clarification or additional information at any time during the

13   application process.  Instead, defendants chose to hire plaintiff knowing that he had suffered

14   back, knee, and elbow injuries in the past and that he had undergone surgery the year before.

15   Defendants have failed to raise a genuine issue of fact regarding misrepresentation or

16   concealment.

17          In the alternative, defendants argue that, even if plaintiff responded truthfully to

18   direct questions regarding his medical history, he is not entitled to maintenance and cure because

19   he did not have a good faith belief that he was fit for duty.  See Burkert v. Weyerhaeuser

20   Steamship Co., 350 F.2d 826 (9th Cir. 1965).  Again, the evidence in the record does not support

21

22          [2]  Although defendants complain that plaintiff failed to inform Mr. Forte about his elbow

23   injury, subsequent surgery, and on-going medical treatment, there is no evidence that Mr. Forte
     ever asked a question that would elicit such information.  As stated in defendants' memorandum,

24   Mr. Forte simply "discussed the long hours and intense physical demands of the position" he

25   was offering plaintiff.  The failure to disclose one's medical history in response to such a
     general discussion of the nature of the position is not unreasonable and does not constitute

26   intentional concealment or misrepresentation.

27   ORDER GRANTING IN PART MOTION FOR
     PAYMENT OF MAINTENANCE AND

28   AWARDING ATTORNEY'S FEES - 4

defendants' argument.  Although plaintiff was in the process of obtaining a second opinion regarding his elbow injury when the possibility of employment with defendants arose, he consulted with his treating physician and was told that he could return to work with no restrictions as of May 14, 2001, four days before he began working for defendants.  Plaintiff accepted the job based on his doctor's "return-to-work" clearance and performed his duties as executive chef for seventeen months without incident.  Other than defendants' conclusory assertions, there is nothing in the record to suggest that plaintiff's treating physician was wrong, that plaintiff subjectively doubted his physician's conclusion, that plaintiff otherwise believed himself to be unfit for duty at the time he accepted employment with defendants, or that plaintiff was, in fact, unfit for duty.

The only outstanding issue regarding maintenance is the date on which defendants' obligation to pay $25/day began.  It is undisputed that plaintiff is not entitled to recover maintenance for the period of time in which he was in custody and had room and board provided by a third party.  It is also undisputed that plaintiff reached maximum medical improvement on July 25, 2005.  It appears, however, that plaintiff remained on the vessel for an unspecified period following his October 7, 2002, injury, during which defendants provided room and board and need not provide duplicate maintenance payments.  According to the evidence in the record, plaintiff was still on board the vessel as of October 9th when he visited Dr. Wu but was home in Minnesota by October 18th.  Plaintiff's motion is therefore GRANTED to the extent that defendants will be required to pay maintenance of $25/day from October 18, 2002, to July 25, 2005 (minus the 30 days plaintiff was in custody).  Whether plaintiff is entitled to maintenance for some or all of the period between October 9, 2002, and October 18, 2002, can be determined at trial.

1

## ATTORNEY'S FEES

2        Plaintiff seeks $5000 in attorney's fees incurred in bringing this action to secure

3  payment of maintenance.  Vaughan v. Atkinson, 369 U.S. 527, 530-31 (1962).[3]  An award of

4  fees and expenses is justified where "the shipowner had been 'willful and persistent' in its

5  failure to investigate [plaintiff's] claim or to pay maintenance."  Glynn v. Roy Al Boat

6  Management Corp., 57 F.3d 1495, 1505 (9th Cir. 1995).  Despite the fact that defendants paid

7  cure following plaintiff's injury, their failure to pay maintenance and their changing

8  justifications for that failure are troubling.  Defendants' insistence that plaintiff resign and

9  attempt to pursue unemployment benefits from the state, despite his injury and seemingly in lieu

10  of maintenance payments, indicates an improper desire to avoid paying maintenance and throws

11  doubt on all of defendants' subsequent explanations for their refusal to pay.  Such explanations

12  include a vague concern that plaintiff was not actually injured in the service of the vessel (Decl.

13  of Louis A. Shields, Ex. 1 at 1 (Dkt. # 20)), an ill-defined argument that the collection of

14  unemployment benefits disqualifies plaintiff from receiving maintenance (Id., Ex. 1 at 1 and 4),

15  an alleged failure to disclose plaintiff's pre-existing injury (Id., Ex. 1 at 3 and 6), questions

16  regarding the precise movements which caused the October 7th injury (Id., Ex. 1 at 4), a lack of

17  documentary support for plaintiff's claim that he was unfit for duty (Id.), and questions

18  regarding the extent to which plaintiff's parents, brother, and/or girlfriend had provided room

19  and board (Id., Ex. 1 at 4 and 6).  Many of these justifications are factually unsupported and,

20  even if true, would not relieve defendants from their obligation to provide maintenance

21  payments to an injured seaman.  The only valid objection to plaintiff's demand for maintenance

22

23        [3]  When defendants challenged plaintiff's right to an award of attorney's fees and the
24  reasonableness of the requested amount, plaintiff responded by seeking an award of fees consistent with
    the analysis set forth in Kerr v. Screen Actors Guild, Inc., 526 F.2d 67 (9th Cir. 1976).  The moving party
25  may not assert a new claim for relief or a new theory of recovery in reply: such tactics deprive defendants
    of their opportunity to respond.  Plaintiff's revised demand for an award of attorney's fees has not been
26  considered.

27  ORDER GRANTING IN PART MOTION FOR
    PAYMENT OF MAINTENANCE AND
28  AWARDING ATTORNEY'S FEES - 6

1  -- the fact that plaintiff was imprisoned in 2003 and remained on the vessel for some period of

2  time following his October 7th injury -- has a negligible effect on the total amount due plaintiff

3  and should not have precluded the payment of maintenance altogether.  The Court finds that

4  defendants' seemingly willful ignorance of facts within their ken, their constant demands for

5  more information, and their legally and factually unsupported objections to the payment of

6  maintenance justify an award of attorney's fees.  The Court also finds that counsel's hourly rate

7  of $250 and the demand for $5000, which works out to only 20 hours of attorney time, are

8  reasonable.

## EVIDENTIARY MATTERS

In response to plaintiff's twelve page motion for payment of maintenance,
defendants filed an overlength memorandum in opposition.  The Court has, therefore, considered
plaintiff's overlength reply memorandum.

Defendants argue that plaintiff raised new allegations and/or provided new
evidence in reply to which they should have an opportunity to respond through the filing of a
sur-reply.  Where new issues were raised, such as plaintiff's revised demand for attorney's fees
pursuant to <u>Kerr v. Screen Actors Guild, Inc.</u>, 526 F.2d 67 (9th Cir. 1976), they were not
considered by the Court.  The specific allegations/evidence identified in defendants' motion for
leave to file a sur-rebuttal, however, are either immaterial or not new.  Whether plaintiff
intentionally misrepresented his medical history has been determined based on the
representations made at the time plaintiff was employed and the contemporaneous medical
records, not on his post-litigation explanations.  To the extent plaintiff felt compelled to provide
evidence from the Washington Employment Security department, that evidence is in response to
defendants' somewhat inconsistent arguments regarding the reasons plaintiff's employment was
terminated.  Similarly, the evidence related to counsel's billing records is an appropriate
response to defendants' challenge to plaintiff's initial demand for an award of attorney's fees.
No further briefing is necessary.

ORDER GRANTING IN PART MOTION FOR
PAYMENT OF MAINTENANCE AND
AWARDING ATTORNEY'S FEES - 7

**CONCLUSION**

For all of the foregoing reasons, the Court GRANTS in part plaintiff's motion for payment of maintenance.  Plaintiff's initial request for $5000 in attorney's fees is also GRANTED.  Defendants shall, within ten days of the date of this order, pay to plaintiff maintenance at the rate of $25/day from October 18, 2002, to July 25, 2005 (minus the 30 days plaintiff was in custody) and $5000 in attorney's fees.  Plaintiff's "Motion to File Overlength Reply Brief" (Dkt. # 28) is GRANTED.  Defendants' "Motion for Leave to File Surrebuttal to Address New Evidence and Allegations" (Dkt. # 29) is DENIED.

DATED this 28th day of November, 2005.

*Robert S Lasnik*

Robert S. Lasnik
United States District Judge

ORDER GRANTING IN PART MOTION FOR
PAYMENT OF MAINTENANCE AND
AWARDING ATTORNEY'S FEES - 8